WHALEY v. JACOBSON & SON.

1. A contract between a landlord and one M., which, taken as a whole, gave to M. the possession of the land for the year, was substantially a lease, and gave M. such an interest in the crops to be made thereon as enabled him to encumber it with liens for advances, subject to the landlord's lien for rent to the extent of one-third of the crop.
2. Where a landlord leased land to a tenant for a stipulated rent, and also agreed to make advances, which were to be repaid out of the crop, but the contract was not recorded nor filed, the landlord cannot, in action against the sheriff, recover for such advances the crop made by the tenant on this land, the sheriff having seized it under a warrant issued upon a merchant's recorded lien of later date, given by the tenant.
3. A landlord, to secure a lien for advances made to his tenant, or for rent exceeding one-third of the crop, must comply with the same terms and conditions as are imposed by the statute upon all others.

Before WALLACE, J., Orangeburg, May, 1883.

The opinion fully states the case.

*Mr. T. B. Whaley,* for appellant.

*Mr. James F. Izlar,* contra.

March 24th, 1884. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. On January 5, 1881, Lawrence M. Whaley entered into a written agreement with one Samuel Middleton as follows: "I, Samuel Middleton, do hereby agree to

plant and cultivate properly, in cotton and provisions, during the year 1881, at my own cost and expenses, thirty-five acres of L. M. Whaley's land in Orangeburg county, and at my own cost and charges to gather and prepare for market the crops to be made thereon, and to deliver the same in accordance with the directions of the said L. M. Whaley or his agent. I further agree to repair and keep in good condition the fencing around said land, in consideration of which the said L. M. Whaley hereby agrees to advance the said Samuel Middleton, during the year aforesaid, fertilizers and supplies, amounting to three hundred dollars, to be used in the cultivation of said crops; that the said Samuel Middleton shall occupy, during the year, the premises now in his possession; and after the said L. M. Whaley has realized twelve hundred pounds of lint cotton, and has also paid the advances to be made as aforesaid, with interest thereon, then the said Samuel Middleton shall have the residue of said crops," &c.

This contract was never indexed or recorded, but Middleton took possession under it. He got some supplies from Whaley under the contract, there being still a balance therefor of $116 due Whaley. During the year he desired other supplies, and in February he gave an agricultural lien for supplies to B. Jacobson & Son, merchants, to the amount of $135. This lien was properly indexed in the clerk's office, February 23, 1881. Middleton delivered the 1,200 pounds of lint cotton to the landlord, Whaley, but did not pay him the balance for advances by him. On December 29, 1881, B. Jacobson & Son procured from the clerk a warrant to seize the crop remaining in the possession of Middleton, and A. M. Salley, the sheriff, levied on cotton seed, fodder, hay, and rice straw, and was about to sell the same, when Whaley, the landlord, brought this action before a trial justice to recover possession of said articles as his property, there being still a balance due to him for advances made during the year.

The jury in the trial justice's court rendered a verdict for defendant, and the plaintiff appealed to the Court of Common Pleas. Judge Wallace affirmed the decision, and the plaintiff appeals upon the following exceptions: "1. Because under the agreement, Middleton's interest in the crop to be produced by his labor was

not such as to enable him in advance to subject it to a legal lien. 2. Because Middleton had no right to give a lien upon the crop which belonged to the plantiff until the residue, or his share, was set apart and delivered to him.    3. Because in the cultivation of plaintiff's land Middleton was not his tenant, but his employé merely, and could not encumber with a lien more than his interest in the crop.    4. Because Middleton had no right or title to any of the produce until the residue was ascertained and delivered to him."

This court has held in several cases that a mere employé, who cultivates the crop of another for hire, either in money or a part of the crop, is not, in the sense of the agricultural acts, "a cultivator of the soil," and entitled, before a division of the crop, to dispose of it or encumber it with liens; but that one who is the owner, or entitled under contract or lease to the possession of the soil which he cultivates on his own account, may give a lien upon the crop thereon produced, subject, however, in the case of a lessee, to the right of the landlord to have his rent first to the extent of one-third of the crop, and that without recording or filing. *Kennedy* v. *Reames*, 15 *S. C.*, 551; *Richey & Miller* v. *DuPre*, 20 *S. C.*, 6; *Carpenter* v. *Strickland, Id.*, 1.

The first question is as to the relation which Middleton bore to Whaley, the owner of the land.    Did the contract make him a tenant or a mere employé?    It is somewhat confused, and all of its parts are not consistent with each other; but taken as a whole, we think it gave Middleton *possession of the premises*; and was substantially a lease for a year.    A lease is defined to be "in effect a conveyance of the possession of property (generally lands or houses) for a fixed period, and usually with the reservation of a rent."    *Rap. & Law. L. Dict.*, 735.

It is true that the stipulations which required Middleton to deliver the crops after they were gathered, "in accordance with the direction of Whaley or his agent," looks as if there was some intention to retain possession of the place; but, on the other hand, the stipulations that Middleton was to "occupy the place" and "keep it in repair," and that "the landlord would make advances to him," are only consistent with the idea of a temporary transfer of possession.    Middleton was to occupy the premises, to

plant and cultivate cotton and provisions at his own cost and expense, and to repair and keep in good condition the fencing; in consideration of which he agreed to take advances during the year; "and after the said L. M. Whaley has realized 1,200 pounds of lint cotton, and has paid (we suppose Middleton) the advances to be made as aforesaid, with interest thereon, then the said Middleton shall have the residue of the crops," &c.

This contract is very different from that in *Huff* v. *Watkins*, 15 *S. C.*, 83, which gave the landlord "the entire control of the time and services of the employé in working his lands under his exclusive direction and control from sun to sun." "A servant, strictly speaking, is a person who, by contract or operation of law, is for a limited period subject to the authority or control of another person in a particular trade, business, or occupation." *Wood M. & S.*, 2. We think Middleton was a tenant of the landlord, Whaley, and "a cultivator of the soil" in the sense of the agricultural acts.

Taking this as settled, Middleton had such an interest in the crop to be made as enabled him to encumber it with liens for advances, subject always to the rights of the landlord for his rent to the extent of one-third of the crop. But in this view, it is urged that the plaintiff also made advances, and being the landlord, his lien was "prior and preferred," whether it was registered or not. It was Middleton's covenant to take "the residue of the crop after these advancements were paid;" and if he had delivered the crop to the landlord in discharge of this obligation, Jacobson & Son could not have recovered their claim in money from him. See *Kennedy* v. *Reames, supra*. But Middleton did not so deliver the crop, which, remaining in his possession, was seized under the warrant of Jacobson & Son, and this gives rise to a different question, viz., whether the landlord had such title in the crop as to enable him to recover possession of it from the sheriff, not under agricultural warrant, but in an ordinary action for delivery of personal property.

As an ordinary lienee, he certainly had no such right, for several reasons, and especially because his lien was not recorded as required by law. As landlord he had the right to his rent to the limit before indicated. What was his rent? Was it limited

to the lint cotton delivered, or did it include also the payment of the advances made? Can the obligation of Middleton that these advances should be first paid be properly regarded as a part of the rent promised by him? The obligation to pay these advances was not in a separate paper, according to the usual form in such cases, but in the original rent contract, and we have little doubt that such agreement was one of the inducements which moved the landlord to grant the lease, and therefore to that extent was part of the consideration of the lease. But it was rather an unusual way of securing rent, and if it were possible so to consider it, we do not see how it could be estimated, especially in view of the limit in the amount of the landlord's lien. The whole amount could not be added as so much more consideration for the use of the land, *i. e., rent*, for the consideration is expressly declared to be *for advances to be made*.

The law favors the landlord, but we do not suppose that, in giving priority to rent, the legislature had in contemplation such contracts as this, or intended to do more than to secure the rent proper to the landlord, and then leave him to make agricultural advances to his tenants upon the same terms and conditions as to recording, &c., as were imposed upon all others. The law expressly declares such to be the intention as to so much of the crop as exceeds one-third, and we do not see why it should not be so construed in reference to advances made by the landlord to his tenant, which are not in its proper sense "rent."

The judgment of this court is, that the judgment of the Circuit Court be affirmed.